Court of Appeals. We have five cases to be submitted today on oral argument. We will likely be taking a short break after the third case. That remains to be seen how things move along, and we begin with United States v. Davis. Mr. Ternan. Thank you, Your Honor. I'm here to please report. My name is Jack Ternan. I represent the appellants, Chyne and Amy Davis, and I'm here for your sentencing. There are a lot of legal issues, and procedural issues in this case. I want to talk about the practical. Mr. Davis has a $62 million restitution judgment against him. He's never going to see any of the property. What the practical implications of my arguments are is that the $4.6 million that was seized from Retail Ready Career Center, Inc. should go not to Mr. Davis, not to the government, but the creditors of Retail Ready Career Center, and the basis of that is that the money essentially never belonged to Mr. Davis. It should have been returned to Retail Ready Career Center, Inc. I'm going to start with Retail Ready Career Center, Inc.'s petition first. You know, Retail Ready Career Center, Inc. pled the required elements under 853-N in its petition. It claims sole and exclusive ownership of the money in its bank accounts. Those allegations should have been taken as true, but instead of taking them as true, the court, the district court, took the government's allegations in its motions to dismiss as true and overriding over the allegations of Retail Ready Career Center, Inc. There's no basis in law in that. And the Retail Ready Career Center, Inc. should have been given a hearing where it had the evidence. The government's argument in its response brief to this court was, you know, Retail Ready specifically identified, you know, when the government's interest tested. I don't think that it's Retail Ready's burden to establish that in its petition, containing it owns the property at all points in time. The wire transactions that were the basis of wire fraud didn't happen until 2016. So at least the money that had been in the account prior to those transactions should be returned to Retail Ready Career Center, Inc. But again, there was never a hearing because the district court simply dismissed the petition. To the extent that some sort of language needed to be added to the petition, I think that if Retail Ready Career Center, Inc. is asserting to be the sole and exclusive owner at all times of its But if I had to add the magic language, the government's not the owner, I should have been given leave to amend to assert that. There's no motion to dismiss practice. This is not in 853N. It's something that's in the Rule of Criminal Procedure. The Rule of Criminal Procedure's comments says you look to Rule 12 for guidance, the Rule of Still Procedure. Facts were construed in favor of the non-movement, in this case Retail Ready. And normally you'd be given leave to amend if there was some sort of defect in the petition. There's no basis whatsoever for the court to just say you're not allowed to do anything. The only thing we're going to preserve from the statute is the 30-day requirement to file a petition. That's the only deadline that we're going to keep. And we're not going to keep the 30-day deadline to hold the hearing. We're not going to keep the elements that are specified in the statute for the pleading. We're going to change everything about this judicially, but we're not going to change the deadline to file. So that's the argument about Retail Ready, Pearson, or Inc. It should have been given a hearing or an ancillary proceeding to address its interest in the property. With respect to the issues regarding Mr. Davis, the prior appeal involved an argument about which definition of proceeds should be used. When you're having a discussion about forfeiture under 18 U.S.C. 981 A1c, you're talking about proceeds of a crime. If the government wants to forfeit property, it has to either be proceeds or derive proceeds. So you have to identify the proceeds as your first step. The government had been using, prior to the first appeal, and is still using, 981 A2a, which is a very broad definition of proceeds. It essentially says that any property of any kind, obtained directly or indirectly, as a result of the commission of offense. Very broad. Essentially, but-for. You commit the offense, does the property come as a result of the offense? It's forfeitable. But this court concluded that 981 A2b is the definition of proceeds. That definition of proceeds is far more limited. It is more limited because it's intended to be used in context of the operation of a business, like we have here. So I thought the main, or the only real issue on remand, was the question of deducting the direct costs incurred, rather than the original definition of proceeds. Well, this court never reached any of the other issues that were raised in the briefing in the first appeal on forfeiture, because it agreed with my argument on why the wrong definition of proceeds was used. And yes, you have to take out the direct costs when you're calculating proceeds, before you start tracing property, before you start doing a money judgment. You have to do that first. And I don't know if it was the court's intention that it would re-reach these issues when it came up on appeal, or if the district court had permission to go further. The Court of Appeals opinion does talk about how it's remanding for purposes consistent with this opinion. So if the Court of Appeals is saying the wrong definition was used, presumably it's instructing the court to use the correct definition. And if it had used the correct definition, the basis for proceeds are the illegal transactions, not the gross amount as a result of the crime, as under 981A2A, but the illegal transactions, as the statute says. And there are only seven illegal transactions identified in the indictment, seven wire-fraud transactions. And the amount of those transactions is also specified in the indictment, and frankly, undisputed, it was $131,405.20. So, under the correct definition, we argued this in the district court before the first appeal, we argued it in front of the court during the first appeal, we argued it on a remand, and we're arguing it again. That is the amount of money that passes as proceeds under the definition this court has identified as applying. And if that is the definition of proceeds, and that is the amount of proceeds, then that money never left retail raise accounts. It was sitting there when the money was seized, which means it never came into Mr. Davis' possession. It can't be forfeited by him. It means that all this other property that has been seized isn't traceable to those proceeds, because the money is still in a retail raise account. And it means that the entire basis of the forfeiture order is incorrect. Even if the court concludes that the district court was unable to re-evaluate the top line method of what constitutes proceeds, and all it was supposed to do was look at the direct costs, even after you take out the direct costs, you still have to retrace the property, right? The initial theory from the government when it traced the property prior to the first appeal was everything, every pay that came into the account is proceeds, right? Well, once you take out the direct costs, the vast majority of the money in that account is not proceeds. It's the direct costs. $45 million of it was direct costs. So when you're tracing money in and out and moving through these accounts, you have to take into account, now the vast majority of the money is not proceeds. But the government never conducted a retracing exercise after the determination of direct costs. And the district court did not. It just assumed, again, that every penny that went into the account was proceeds, which is not consistent with the definition this court has indicated should apply. Now, the remand rule, or the mandate rule, is a subset of the law of the case. It only applies to things that are actually decided by the court. This court didn't reach the H&M issue, didn't reach the question of what money in this account constitutes proceeds It didn't reach the Honeycutt issues about whether or not... Well, that's not exactly right. I mean, if a court decides all these issues are presented at rules on 2 or 3, maybe it should have said something about the others, but it enters a judgment. You can't come back later and say, well, the mandate rule, it didn't mention our 8th Amendment argument. That's a final judgment as to all issues raised, period, whether the court commented on it or not, isn't it? This court's judgment vacated the formative court. But it's very specific about what the remand was. It was specific. Well, it was and it wasn't specific, right? There is a sentence in there about a remand to figure out the correctness. A limited remand, and it says a limited remand, and it says for this. Right. I agree. It also says in some places that it's remanding for, you know, further proceedings consistent with its opinion, right? This court never reached any of the other issues, and it agreed with the arguments that I was making on my very first point on the forfeiture order. I don't know that you can infer that the court, agreeing with step 1 on what we need, disagreed with me on everything that follows. I don't think that – I don't see how by necessary implication anyone can assume that I lost on issues the court didn't get to, especially when it ruled in my favor on the issue it did get to. It certainly didn't explicitly say that, and at the end of the day, this court is only bound by what it does explicitly say. Those issues are still right. It's like any other limited remand, right? This court could, at any time, send it back to the district court, hey, go figure out this particular issue, and then it'll come back to the court of appeals to figure out all the other issues. That, in fact, happened in this case, because initially the district court failed to include the forfeiture items in its judgment. So the court did a limited remand, go add the forfeiture stuff to the judgment, and it'll come back to us, and it'll be just like we were before, right? That's what happened, I would say, at the end of this first appeal here, where the court sent it back, figure out the direct costs, right? And really, when it says limited remand, figure out if there are any direct costs, right? That's what it actually says, because if the direct costs are greater than zero, then the government's entire forfeiture theory doesn't work, because its entire forfeiture theory, I mean, the tracing of specific items to proceeds, it's a money judgment, everything it actually presented in the trial court is evidence, presumes the first definition, and that there is no direct cost to the judge. If there are direct costs to the judge, the government never met its burden to prove forfeiture of anything. I'm not asking for a reverse remander. I think it needs to go back to the district court to actually follow the statute that the court already told it to follow, which is use 981A to B, all of it, right? Use all of it. Identify the illegal transactions. Maybe the government actually presents evidence of what the intended illegal transactions are, right? But then take the direct costs out of it. It still hasn't been done, even though that is what the implications of what this court's order are, right? Use the wrong definition. Go use the right definition. Take out the direct costs. The district court didn't start over, didn't do what it was supposed to do. The government didn't do what it was supposed to do. This court never reached a cut-and-cut, right? It never addressed the fact that there's money in Rachel Ray's account that never came into Mr. Davis' possession. There's been more precedent. That is not something that Mr. Davis can be ordered to forfeit, right? You can only be ordered to forfeit the money you actually possess. That's what 853D says. If the court has no further questions, I will yield my time. You've saved time for rebuttal. Thank you, Mr. Chairman. Good morning, Your Honors, and may it please the Court. My name is Elise Lyons. I represent the United States. The district court correctly found that the modified forfeiture money judgment is $19 million. The district court correctly dismissed Retail Ready's third-party petition. All other issues are barred by the mandate rule, and therefore this court should affirm those orders. The scope of the remand in this case was narrow. As Judge Richman pointed out, the court said, We affirm in nearly all respects, except that we vacate the forfeiture order, remanding for further proceedings. Specifically, the court said, We therefore remand for the limited purpose of determining whether Davis can prove any offset under the terms of Section 981A-2B. The district court held a hearing at which Roy Cook, the former chief financial officer of Retail Ready Corporation, testified. The district court adopted Mr. Cook's findings of direct costs in this case, and appropriately backed out that number from the top-line proceeds number that it had already found. The one thing the district court did differently was, rather than the $72 million of proceeds that this court found was the top-line number, the district court, in fact, gave Mr. Davis a $7 million benefit because it used the figure $65 million, which this court affirmed was the appropriate number both for restitution and for the intended loss calculated under the pre-sentence report that impacted Mr. Davis' sentencing. So, if anything, Mr. Davis received a benefit in this case. But ultimately, the backing out of those direct costs led the district court to conclude that the appropriate forfeiture money judgment was $19 million in this case, and that should be affirmed. So, what do you do with Mr. Ternan's point that we just heard, which is that in the first appeal, some issues, he particularly mentioned the Eighth Amendment issue, some of those issues were not decided. Your Honor, a number of those issues are acquired by the mandate rule and by the law of the case. This court did, in fact, previously consider a number of those issues. Specifically, one issue was on the amount of proceeds, whether they should be this $131,000 tying to the seven specific wire transactions. Mr. Ternan said that this court did not consider that, but in fact, in this court's opinion, it said, when Davis made the argument against the $65 million restitution order, this court found it, quote, meritless. As for Davis' focus on the seven specifically charged wire transfers, we've already explained why this is mistaken. The broader scheme, and not just the specific wires, is itself an element of the offense. And for this specific point, the court found there was sufficient evidence showing that Mr. Davis was responsible. So that issue has, in fact, been directly considered by this court and foreclosed. The Eighth Amendment issue also, if anything, again, there's been a benefit to Mr. Davis based on the revised forfeiture money judgment. Whereas the previous forfeiture money judgment was $72 million, this court found no Eighth Amendment violation for that. There certainly shouldn't be an Eighth Amendment violation for a revised forfeiture money order of only $19 million. Case law specifically supports this court's finding that there's no Eighth Amendment violation for forfeiture of criminal proceeds. And the case that's most on point is United States v. Bettencourt, which found that there's not an Eighth Amendment violation for forfeiture of criminal proceeds. Turning to Mr. Turnin's argument about the third-party petition of Retail Ready, the district court correctly dismissed the Retail Ready's third-party petition because it failed to state a claim. Specifically, this court should not allow Retail Ready to go forward on a third-party petition because of the relation back doctrine. In this case, the scheme of Retail Ready ran beginning in May 13, 2013 through December 13, 2019. In its petition, Retail Ready alleged an interest in the proceeds in the amount of money in the bank account in 2017. But under the relation back doctrine, which is found in 21 U.S.C. Section 853C, all right, title, and interest in forfeited property vests in the United States upon the commission of the act giving rise to forfeiture. This court has considered similar facts in the Corpus and Galowski cases, which found that under a relation back doctrine, the proceeds of the defendant's criminal activity and any property that was purchased with those proceeds is subject to forfeiture and vests in the government at the time of the offense. Mr. Turnin said that the wire fraud, again, tied to those seven specific transactions, happened in 2016. But the evidence in this case, including the trial evidence, showed that the scheme actually began in 2013. Additionally, the forensic auditor, Tracy Clark Ross, who looked closely at hundreds of pages of bank statements in this case, found that prior to the deposit of GI Bill benefit, the first deposit into Retail Ready's bank accounts, which occurred November 5, 2014, the Retail Ready bank account actually had a balance of negative $9,800. And between November 2014 and October 2017, when the school closed, more than $72 million of GI Bill benefits were received into this bank account. And that was the number that became the top-line proceeds, constituting the fraud proceeds in this case. The other issue that I wanted to address is specifically the deficiency of the fleeting on Retail Ready's third-party petition. And Mr. Turnin's suggestion that the district court either should have granted a hearing or should have allowed Retail Ready to amend its petition. There's no legal authority for the argument that Mr. Turnin makes that Retail Ready only needed to state a claim for an evidentiary hearing, that that is somehow a different standard than pleading for the case. The Fifth Circuit case law, specifically the Holy Land Foundation case, makes it clear that any third-party petitioner needs to state a claim for relief under 21 U.S.C. 853 N6. And there's a distinction between standing, meaning a legal interest in the funds, so the fact that Retail Ready's name is on the bank account might give it a legal interest in the funds, and sufficiency of stating a claim under either ground of 21 U.S.C. 853 N. There's further no legal authority that Mr. Turnin can point to that 21 U.S.C. section 853 N requires a hearing when a petition is deficient and it fails to state a claim. Section 853 N does not require a hearing. Instead, it provides guidance on the manner of the hearing if the district court were to have one. But the federal rules of criminal procedure are clear. Rule 32.2 C.1.A specifies that the district court may dismiss a petition, and Rule 32.2 C.1.B provides that a ruling on a motion to dismiss can take place prior to any evidentiary hearing, and other district courts have found that to be true. Specifically, one case, United States v. BCCI Holdings from the District of D.C. found that a district court can dismiss a third-party petition without a hearing if the third-party petition fails to allege all elements necessary for recovery, including standing. The district court can also deny any leave to read when an amendment would be futile, which it would be in this case under the relation-backed doctrine, again, because the government's interest in these funds vested when the scheme began in 2013, which necessarily predates any claim by RetailReady. Another point that Mr. Turnin has made is that the funds actually belong to RetailReady, that they never belonged to Davis, and this is the Honeycutt argument. The district court correctly found that Honeycutt does not apply in this case because Honeycutt was about a conspiracy. In this case, Mr. Davis was the sole criminal defendant. He was the sole shareholder of RetailReady. The district court found that he exercised control over the bank accounts of RetailReady, and the district court found that RetailReady was, in fact, the alter ego of Davis. The district court, under Rule 32.2b1b, a determination of forfeiture by a district court, the rule specifies, can be based on evidence already in the record and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. The record in this case is voluminous. There have been multiple motions by the government for forfeiture hearings on the forfeiture issues and then obviously this appeal, and the trial evidence as well. There's certainly ample evidence in the record for the district court to make conclusions about the $72 million of proceeds and about the tracing. Specifically, again, this auditor, Tracy Clark-Ross, not only did she testify in the trial court, but attached to the motions for preliminary order of forfeiture, she submitted a declaration, which again reiterated all of the extensive tracing that she did in this case. This court also found, in the initial opinion, that the clean funds out rule is sufficient. This court cited Evans in response to an argument made by Mr. Ternan about the money laundering tax and the fact that the $3.2 million of forfeiture from the money laundering accounts, again, exceeded this $131,000 of wire fraud proceeds. And this court cited Evans and found that the total amount of proceeds certainly exceeded those $131,000 and those dirty funds that can be counted as coming out of the bank account in this case. Additionally, Your Honors, one point I wanted to just clarify here, because this is a consolidated appeal, I wanted to address the other case. We've been talking a lot about case number 24-10793. Speaking about case number 23-10202, this is the appeal by Mr. Davis from the February 14th, 2023, final order of forfeiture of specific property. Mr. Davis appealed this specific order, citing that the court should not have entered a final order of forfeiture while the appeal was pending, and again reiterates this $131,000 is the appropriate proceeds number. But this court should reject that argument because the remand did not disturb any forfeiture of specific property. The limited remand in this case applied only to the forfeiture money judgment. It just asked the district court to back out those direct costs under the revised, the correct definition of proceeds. Davis himself does not have standing to contest the forfeiture of specific property because the order of specific property becomes final as to a criminal defendant at the time of his sentencing. And again, the district court has previously rejected the $131,000 argument and previously adopted the government's tracing and this lowest intermediate balance rule and the analysis that showed money flowing from the VA to the retail-ready bank accounts and then to Davis to purchase these specific assets that are the subject of that February 14th order.  I believe I've covered everything that I wanted to. If the court has no further questions, I will feed the balance of my time and urge this court to affirm. All right. Thank you, Ms. Lyons. Mr. Ternan for Rubado? Thank you, Your Honor. With respect to Retail-Ready Career Center's petition, I understand that the government contends that there was investing back in 2013 and they contend there was evidence for all that. This is a motion to dismiss, right? It's not an evidentiary hearing. Retail-Ready never got to present any evidence. I don't agree that the government's interest vested in 2013. I think it invested in 2016 as the earliest. But again, on a motion to dismiss, none of that should have mattered, right? The question is, did Retail-Ready state a claim? Retail-Ready did state a claim. It stated it owed the money that was coming out of its accounts. And at all times, the money in its accounts was solely exclusive property, right? You have to take that as true, right? Retail-Ready should have been able to contest the arguments of the government and it wasn't given an opportunity to do so because the court chose to skip past a motion to dismiss and just adopt the government's contentions. That's not how a motion to dismiss is supposed to work. With respect to the evidence on tracing that Ms. Ross submitted, she offered testimony under the definition of 981A2A, the gross proceeds approach. That is the evidence the government presented and the only evidence the government has ever presented connected to forfeiture, restitution, or money laundering. For money laundering, you can use a gross proceeds number because that's the definition that the money laundering statute uses, right? That's why this court of appeals affirmed the money laundering argument. But on the forfeiture argument, this court recognized that there's a different definition of proceeds that applies. Ms. Ross never submitted any evidence or any testimony. The government didn't submit any testimony for anybody else under the actual definition where you have to take out the direct costs. They never did the specific property correctly. I contested the specific property in the first appeal. I'm contesting it now. I've contested it in district court both times. They made an argument about the first part of this consolidated appeal that Mr. Davis doesn't have standing to contest it. Well, this court, Mr. Davis has standing to contest a preliminary order for forfeiture. This court vacated the preliminary order for forfeiture. Despite this court vacating the preliminary order for forfeiture, the district court entered a final order for forfeiture, which it can't do until there's a preliminary order for forfeiture. If Mr. Davis can't contest the final order for forfeiture, he's never going to get a chance to contest it at all because the court's not going to be able to enter a preliminary order for forfeiture again. It entered a final order. He has standing to contest that. The $131,000 argument was addressed by this court of appeals in connection with the money laundering and in connection with the restitution. And it ruled against Mr. Davis on those points, on the money laundering and the restitution. It didn't address it in connection with forfeiture. It didn't address it in connection with forfeiture. And probably, I don't know, one of the reasons it didn't address it in connection with forfeiture is because it recognized that forfeiture has a different statute that applies. I don't know why the court of appeals previously said, just go figure out the direct costs, because I don't know how that really flows from the decision that this court made, that the wrong definition was used. But once you figure out the direct costs, you've got to at least keep going, right? You have to figure out, okay, now I trace the property to the proceeds that are left over after I deduct the direct costs. The district court never did that. The district court was never presented with any evidence from the government in order to do that. And this court needs to remand it back to the district court to actually do what it should have done this last time around. Conduct a forfeiture hearing. Go look at what's the illegal transactions. Use the definition we gave you to use. Have the government present evidence on the definition that we told you to use, not the definition we told you that we rejected. Figure out what the direct costs are. Figure out what Mr. Davis actually received, because I think this court needs to address the honeycut issue of you can't order someone to forfeit property they never obtained and come back. That's my recommendation to the court. I think that's what the law requires. I don't think the remand rule or the mandate rule precludes this court from addressing the issues that have been raised over and over again that have never been reached, and I urge the court to reverse the remand to the district court. Thank you. Thank you, Mr. Tiernan. Your case is under submission.